**THE LAW OFFICES OF AHREN A. TILLER**
Ahren A. Tiller, Esq. [SBN 250608]
ahren.tiller@blc-sd.com
1230 Columbia Street, Suite 1100
San Diego, CA 92101
Telephone: (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN MCMILLAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DRAFTKINGS, INC. <br> Defendant. | Case No.: **'15 CV 2579 H    WVG** <br><br> CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF FOR VIOLATIONS OF: <br><br> 1.) CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 <br><br> 2.) CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500 <br><br> 3.) FRAUD IN THE INDUCEMENT <br><br> 4.) CALIFORNIA CIVIL CODE § 1750 <br><br> JURY TRIAL DEMANDED |

## INTRODUCTION

1. Plaintiff JULIAN MCMILLAN (hereinafter referred to as "Plaintiff"), individually and on behalf of all other similarly situated, brings this class action against DRAFTKINGS, INC (hereinafter as "DraftKings" or "Defendant") with respect to Defendant's false, misleading and targeted

advertising regarding its alleged 100% payout bonuses.

2. DraftKings operates draftkings.com, a "daily fantasy sports" website that allows users to assemble sports "teams," which compete against other user's teams.  Users must pay an entry fee to compete, and may be awarded winnings from prize pools, depending on the performance of their fantasy teams.

3. Daily fantasy sports, as an industry, is projected to generate $31 billion in player entry fees by the year 2020.

4. DraftKings generates revenue through a rake of daily fantasy sports contest payouts.  Although variable, a typical rake is about 10 percent, or $10 for every $100 of player winnings.  In 2014, an estimated 200,000 participants actively wagered on DraftKings each month, comprising a 2014 DraftKings user-base of nearly 1 million registered users.  In 2014 DraftKings awarded a total of approximately $200 million in prizes.

5. To recruit new website users and players, DraftKings uses TV and the Internet to advertise, including by running television ads, sending email advertisements, placing fixed advertisements on websites, and serving targeted ads on consumers that meet a certain profile.  Certain of these advertisements state that customers will receive a "100% DEPOSIT BONUS":  "Deposit today and DraftKings will match you dollar for dollar."

6. These advertisements are intended to induce, and do induce, consumers to create an account on draftkings.com, and to deposit money to compete in fantasy sports games.  The advertisements are also designed to encourage consumers to deposit more money than they otherwise would deposit with draftkings.com.  Thus, for example, if a consumer deposits $100 with Defendant in response to a "100% bonus" advertisement, he reasonably expects that he will have $200 available for use on Defendant's website.

7. Defendant's advertisements are false and materially misleading.  It is only

after a consumer completes the deposit transaction that Defendant informs him or her that only a small percentage of the bonus will be made available to the consumer, based on the games played and dollars spent. Moreover, the bonus funds expire four months after the initial deposit – meaning many consumers will never be able to utilize the full bonus amount.

8. In response to an online advertisement placed by Defendant, Plaintiff registered with draftkings.com, and made a $100 deposit, expecting to receive $200 in funds. Plaintiff was surprised and disappointed to discover that, not only was his bonus not immediately available, after betting on his first game, he only received 4% of the promised bonus funds.

9. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's Counsel, which Plaintiff alleges on personal knowledge.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives and insurers of Defendant.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under 28 U.S.C. §1332(d), because this is a class action in which: (i) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (ii) members of the proposed Class are citizens of a State different from Defendant; and (iii) the number of Class Members is greater than 100.

12. Because a substantial portion of the wrongdoing alleged herein occurred in California, the Court has personal jurisdiction over Defendant. Defendant also has sufficient minimum contacts with California and has otherwise intentionally availed itself of the markets in California through the

promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) Defendant is subject to the Court's personal jurisdiction with respect to this action because Defendant conducts business in this judicial district; and (iii) Plaintiff resides in this judicial district.

**PARTIES**

14. Plaintiff and those similarly situated, are and at all times mentioned herein were, individual citizens and residents of the United States of America, State of California.

15. Plaintiff is, and all times mentioned herein was, an individual citizen and resident of the County of San Diego, State of California.

16. Plaintiff, and those similarly situated, are natural persons that were induced by DraftKings to participate in DraftKings daily fantasy contests through false and misleading advertising.

17. DraftKings hosts online fantasy sports contests for residents of 45 of the 50 United States and the District of Columbia.  From computers and other devices in their home states and elsewhere, customers deposit money, and engage in fantasy sports competition with other customers nationwide, wagering various sums of money in an array of contests.  DraftKings advertises its services nationally, including within the Southern District of California, both on television and over the internet.

18. DraftKings, Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts.

**GENERAL ALLEGATIONS**

19. According to draftkings.com, the website "is a leading skill-based Daily Fantasy Sports (DFS) gaming destination for fans in North America to compete in single-day online games for cash and prizes across the largest variety of professional and collegiate sports. DraftKings is the exclusive DFS partner of Major League Baseball, the National Hockey League, Major League Soccer, NASCAR and Ultimate Fighting Championship." DraftKings offers various types of contests for money, all of which it asserts are legal.

20. To be eligible to play on draftkings.com, a customer must make a deposit with any major credit card, or PayPal. The deposit is used to buy-in to fantasy contests, to win cash and prizes.

21. To induce consumers to create a draftkings.com account, deposit funds and participate in daily fantasy sports contests, Defendant operates massive marketing campaigns on television, the radio, and through desktop and mobile internet web advertisements and application-placed advertisements.

22. Defendant's marketing approach is to saturate the mediums it targets. Since August 1, 2015, DraftKings has spent over $81 million in television advertising alone[1].

23. Defendant's most prominent advertising campaign clearly promises potential customers that DraftKings provides first-time customers with a "100% Deposit Bonus" matching their initial deposit, up to a maximum of $600.00.

24. Defendant promotes this "deposit match" to induce consumers into making an initial deposit, and to induce consumers into making a larger initial

---

[1] See http://blogs.wsj.com/cmo/2015/09/16/are-draftkings-and-fanduel-bombarding-fans-with-too-many-ads/

deposit than they otherwise would provide in the absence of the advertising.

25. Defendant's advertisements are intended to convince consumers that, for example, if an individual were to make an initial deposit of $100, they would have $200 available to play fantasy sports contests through DraftKings.

26. Some examples of the DraftKings "deposit match" Internet advertisements are:







27. When potential customers click on one of these ads, they are redirected to the DraftKings website to claim the "100% First-Time Deposit Bonus." They then are directed to "CLAIM FREE OFFER" and routed to a special webpage for signing up as a new user and claiming their "deposit match."

28. Once potential customers begin the registration process, the DraftKings page includes a timer warning that, if the potential customer does not sign up quickly, they will lose out the "limited time" deposit match. The timer starts at 10:00, ticking down by the second, and includes statements urging potential customers to make their deposit immediately, and that DraftKings will match the initial deposit up to $600.00. Directly below the descending timer are clickable boxes that allow potential customers to choose from the following: (1) a $25 initial deposit with a corresponding "$25 free bonus;" (2) a $50 initial deposit with a corresponding "$50 free bonus;" (3) a $100 initial deposit with a corresponding "$100 free bonus;" or (4) a $600 initial deposit with a corresponding "$600 free bonus."

29. Only after a new customer (1) completes the registration process, (2) completes the payment process for their initial deposit, and (3) enters a fantasy sports contest, do they find out that the promised "100% First-Time Deposit Bonus" is a fraud.

30. Contrary to DraftKings' smothering advertising campaigns, customers do not receive an initial deposit bonus match. Upon making an initial deposit, new customers are not credited with any additional funds by DraftKings. Instead, the deposit bonus is "released" in increments of $1 for every 100 Frequent Player Points earned by a player. The number of Frequent Player Points awarded are variable, based on the type of contest that the player joins and the amount of money they spend.

31. Not only is the deposit bonus not made available to players, but it expires four months from the date of the initial deposit. Thus, if a player does not

earn a sufficient number of Frequent Player Points during their first four months after joining draftkings.com, they forfeit the balance of their deposit bonus.

32. Moreover, it is only after a new customer has made their initial deposit that DraftKings make them aware that, if the customer then enters daily fantasy sports contests, then they would receive a trivial bonus deposit of only 4% of the funds the new customer risks in a given daily fantasy contest.

33. On or about September 24, 2015, Plaintiff viewed a DraftKings advertisement, which offered a 100% deposit bonus.  Based on that advertisement, Plaintiff was induced to visit the draftkings.com website, register for an account, and make an initial deposit.

34. Plaintiff deposited $100.00 via credit card in the DraftKings online portal, and used the promo code he obtained from the online advertisement offering the 100% deposit bonus.  At no time during this transaction was Plaintiff notified that the deposit bonus would only be made available to him incrementally, or that it would expire.

35. Upon completion of the registration process, Plaintiff accessed his draftkings.com online account, expecting to have $200 available for use on the website.  Plaintiff was shocked and disappointed to discover that he only had $100 in his account.

36. Moreover, when Plaintiff entered his first daily fantasy contest, he received only 3% of the $100.00 he played on fantasy football, and did not receive a "100% first-time deposit bonus" as promised in Defendant's false and misleading advertisements.

37. For Plaintiff to have actually received a 100% match of his original $100, he would have had to deposit a total of $2,500.00, and risk all of it by playing in daily fantasy sports contests.  Thus, to receive the full "100% deposit match" promised by DraftKings, Plaintiff would have had to make the same

deposit 25 times, or 2500% of the advertised amount in order to receive the falsely promised benefit of a "100%" match of his initial deposit.

38. But for Defendant's false, misleading, fraudulent and deceptive advertisements, Plaintiff and the similarly-situated members of the class would not have made an initial deposit with DraftKings, or would have deposited a smaller amount of money.  Plaintiffs and similarly-situated class members have been, and will continue to be, injured by Defendant's false and deceptive advertisements.

## CLASS ACTION ALLEGATIONS

39. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 38, inclusive, as though fully set forth.

40. Plaintiff and the members of the Class have all suffered an injury in fact as a result of the Defendant's unlawful conduct.

41. The "Class Period" means 48 months prior to the filing of the Complaint in this action.

42. Plaintiff brings this lawsuit on behalf of himself and other similarly situated individuals under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedures.  Subject to additional information obtained through further investigation and/or discovery, the proposed class ("Class") consists of:

> All persons who registered and submitted payment for daily fantasy sports wagering on the Draftkings.com website using either a 100% deposit bonus promo code, or who clicked through to the Draftkings.com website from a 100% deposit bonus targeted advertisement, within the 48 months immediately prior to filing this action.

43. *Ascertainability*.  The members of the Class are readily ascertainable from Defendant's records of promotional code usage and click through advertisement registration for newly created user accounts.

44. *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed class consists of tens of thousands of members, or more.

45.  *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. All members of the Class have been subject to the same conduct and their claims are based on the widespread dissemination of fraudulent, deceptive, and misleading advertising perpetrated by Defendant.  The common legal and factual questions include, but are not limited to, the following:

   a.  the nature, scope, and operations of the wrongful practices of Defendant;

   b.  whether Defendant engaged in a course of unfair, unlawful, fraudulent, and/or deceptive conduct in connection with its daily bonus advertising;

   c.  whether Defendant knew or should have known that its business practices were unfair and fraudulent;

   d.  whether Defendant owed a duty of care to Plaintiff and the Class;

   e.  whether Defendant made fraudulent and/or misleading representations in connection with offering bonuses to consumers;

   f.  whether Defendant's fraudulent and deceptive conduct induced Plaintiff and the Class into depositing funds with Defendant that Plaintiff and the Class otherwise would not have deposited;

   g.  whether Defendant harmed Plaintiff and the Class; and

h. whether Defendant was unjustly enriched by its deceptive practices.

46. *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, was lured by false and deceptive advertising to Defendant's website, entered a "match your deposit" promotional code offered by Defendant, and then made an initial deposit of monies into Defendant's business. Defendant has no defenses unique to the named Plaintiff.

47. *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interests to those of the Class, and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

48. *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the courts and the issues raised by this action. The damages or other financial detriment suffered by individual Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even

if the members of the proposed Class could afford such litigation, the Court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

49. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and fraudulent conduct alleged herein. Unless a class wide injunction is issued, Defendant will also likely continue to mislead the public with false and misleading advertising and thus continue to unjustly collect payments on those invalid claims in violation of the law.

50. Furthermore, Defendant has acted or refused to act on grounds that are generally applicable to the Class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

### FIRST CAUSE OF ACTION

### FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.

51. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 50, inclusive, as though fully set forth.

52. Plaintiff and Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code § 17201. Cal. Bus & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

53. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

### A. *"Unlawful" Prong*

54. By knowingly and intentionally disseminating false and misleading advertising statements for the purpose of luring customers into depositing monies into its business, Defendant perpetrated fraud in the inducement under California law.

55. Because Defendant perpetrated fraud in the inducement, Defendant violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, which provides a cause of action for an "unlawful" business act or practice perpetrated on members.

56. By knowingly and intentionally disseminating false and misleading advertising statements for the purpose of luring customers into depositing monies into their business, Defendant violated Cal. Bus. & Prof. Code §§17500, *et. seq.*

57. Because Defendant violated Cal. Bus. & Prof. Code §§17500, *et. seq.* through false and misleading advertisements, Defendant has violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, which provides a cause of action for an "unlawful" business act or practice perpetrated on members.

58. Defendant had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein, such as

continuing its massive advertising campaign without the deceptive, misleading, and false claims.

59. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

## B. *"Unfair" Prong*

60. Defendant's actions and representations constitute an "unfair" business act or practice under § 17200 in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Without limitation, it is an unfair business act or practice for Defendant to advertise statements it knows are false and misleading.  Said conduct by Defendant is "unfair" because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that Defendant's conduct caused Plaintiff and the Class Members to deposit monies into draftkings.com, further perpetuating Defendant's unlawful advertising.

61. At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendant committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200 *et seq*., by knowingly and intentionally misleading the public through false and deceitful advertising, and collecting monies resulting from the unlawful advertising.

62. Defendant could and should have furthered its legitimate business interests by not perpetrating fraud on the entire nation.

63. Plaintiff and other members of the Class could not have reasonably avoided the injury suffered by each of them.

64. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

### C. *"Fraudulent" Prong*

65. Defendant purposefully caused the public to be deceived by massive deceitful advertising campaigns, aimed at enticing potential customers to deposit monies into Defendant's account under the false impression that their deposit would be "matched" by Defendant.

66. By publishing such knowingly misleading and untruthful statements, Defendant deceived the consuming public within the meaning of Cal. Bus. & Prof. Code §17200 *et seq*.

67. Defendant engaged in fraudulent acts and business practices by knowingly representing to Plaintiffs, and other similarly situated consumers, that their deposit would be "matched" upon joining DraftKings.

68. As a direct consequence of its fraudulent acts and business practices, Defendant was paid monies by Plaintiff and similarly situated members of the Class.

69. Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

70. The unfair and fraudulent business practices of Defendant, as described above, represents an ongoing threat to consumers in that Defendant will continue to mislead the public by continuing to run knowingly false and misleading advertising campaigns, thereby generating revenue on a grand scale as a direct result of its fraudulent scheme.

## D. *"Deceptive or Misleading Advertising" Prong*

71. Defendant has engaged in a nationwide advertising campaign through television, internet, radio, and other media wherein Defendant promises to potential customers that Defendant will match any initial deposit made by a new customer up to a maximum of $600.00

72. In describing its "deposit match" offer, Defendant's advertisements state that new customers making an initial deposit will "double [their] first deposit up to $600," clarifying, "[t]hat means that if you put in $100, you get $200 to play with."

73. On its website, DraftKings states that new depositors will "Receive a 100% First-Time Deposit Bonus" if they "CLAIM [their] FREE OFFER" (bolding, but not capitalization, added).

74. Defendant did not in fact match Plaintiff's initial deposit. Instead, after Plaintiff made his initial deposit he discovered that, contrary to the advertised statements, DraftKings would only provide a deposit bonus of 4% if Plaintiff subsequently entered daily fantasy sports contests. Moreover, the bonus funds provided by Defendant expire four months after the date of the initial deposit.

75. Defendant had actual knowledge that these and similar statements advertising the "deposit match" promotion were false and misleading.

76. By disseminating these deceptive advertisements, Defendant intended the representations contained therein to induce consumers throughout California to deposit money. Defendant had actual knowledge, or should have known, that its advertisements would lead consumers to expect a dollar-for-dollar deposit match.

77. Plaintiff and the Class relied on the false and misleading statements by Defendant when determining whether to deposit funds with DraftKings.

78. But for Defendant's knowingly fraudulent and misleading statements,

1    Plaintiff and the Class would not have deposited funds with DraftKings.

2    79. Plaintiff and the Class were damaged by depositing funds with DraftKings.

3    80. The conduct of Defendant as set forth above demonstrates the necessity for

4        granting injunctive relief restraining such and similar acts of unfair

5        competition pursuant to California Business and Professions Code.  Unless

6        enjoined and restrained by order of the court, Defendant will retain the

7        ability to, and may engage in, said acts of unfair competition, and misleading

8        advertising.  As a result, Plaintiffs and the Class are entitled to injunctive

9        and monetary relief.

10

11

12                        **SECOND CAUSE OF ACTION**

13    **FOR VIOLATIONS OF CALIFORNIA'S FASLE ADVERTISING LAW**

14               **CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.**

15    81. Plaintiff realleges and incorporates by reference each and every allegation

16        contained in Paragraphs 1 through 80, inclusive, as though fully set forth.

17    82. Plaintiff brings this claim individually and on behalf of the Class Members

18        for Defendant's violations of California's False Advertising Law ("FAL"),

19        Cal. Bus. & Prof Code §§17500, *et seq.*

20    83. Under Cal. Bus. & Prof. Code §§17500, *et seq.* it is "unlawful for any person

21        to make or disseminate or cause to be made or disseminated  before the

22        public in this state … in any advertising device … or in any other manner or

23        means whatever, including over the Internet, any statement, concerning …

24        personal property or services, professional or otherwise, or performance or

25        disposition thereof, which is untrue or misleading and which is  known, or

26        which by the exercise of reasonable care should be known, to be untrue or

27        misleading"

28    84. Defendant engaged in a nationwide, massive advertising campaign through

television, internet, radio, and other media, premised on a promise to potential customers that Defendant would "match" their initial deposit up to a maximum of $600.00.

85. Defendant's advertisements were made in California and come within the definition of advertising as contained in Cal. Bus. & Prof. Code §§17500, *et seq.*

86. Defendant in fact was not matching new customers' initial deposits up to a maximum of $600.00.

87. Instead, Defendant was offering only a "deposit match" of a trivial 4% of any amount of the initial deposit subsequently wagered on draftkings.com fantasy sports contests by a new customer.

88. This scheme would require Plaintiff and the Class Members to deposit nearly 25 times as much money as advertised to receive a "match" of the amounts advertised by Defendant.

89. Plaintiff and the Class Members were induced into depositing funds with Defendant based on Defendant's false and misleading advertisements.

90. Defendant knew or should have known that the advertisements were false and misleading as it did not offer a "100% match" of new customers' initial deposits.

91. Defendant violated Cal. Bus. & Prof. Code §§17500, *et seq.* by misleading Plaintiff and the Class Members to believe that their initial deposit would receive a "100% match" bonus.

92. Plaintiff and the Class Members lost money as a result of Defendant's violations of Cal. Bus. & Prof. Code §§17500, *et seq.* because they would not have deposited funds with DraftKings if not for Defendant's illegal conduct described herein, of if the true facts regarding the "deposit match" were disclosed prior to the initial deposit. As a result, Plaintiff and the Class are entitled to monetary and injunctive relief.

# THIRD CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT

93. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 92, inclusive, as though fully set forth.

94. Defendant knowingly made numerous and repeated false statements of material fact on its website, in video advertisements, and in television advertisements.

95. For example, one false and misleading statement is reflected in Defendant's promise to Plaintiff and the Class to "double [their] first deposit up to $600," clarifying, "[t]hat means that if you put in $100, you get $200 to play with." On its website, DraftKings states that new depositors will "Receive a 100% First-Time Deposit Bonus" if they "CLAIM [their] FREE OFFER" (bolding, but not capitalization, added).

96. Defendant assured Plaintiff and the Class that it would "DOUBLE [THEIR] CASH" upon deposit. It further promised Plaintiff and the Class that if they deposited $25, they would get a "$25 Free Bonus"; if they deposited $100, they would get a "$100 Free Bonus"; if they deposited $250, they would get a "$250 Free Bonus"; and if they deposited $600, they would get a "$600 Free Bonus."

97. Defendant had actual knowledge that these statements were false and misleading.

98. Alternatively, Defendant should have known that these statements were false and misleading and likely to induce consumers to deposit money, or to deposit more money, where they may not otherwise do so.

99. By disseminating these deceptive advertisements, Defendant intended the representations contained therein to induce consumers throughout California to deposit money. Defendant had actual knowledge, or should have known, that its advertisements would lead consumers to expect a dollar-for-dollar

1    deposit match.

2    100. Plaintiff and the Class relied on the false and misleading statements by

3        Defendant when determining whether to deposit funds with DraftKings.

4    101. Plaintiff and the Class were damaged by depositing funds with DraftKings.

5    102. But for Defendant's knowingly fraudulent and misleading statements,

6        Plaintiff's and the Class would not have deposited funds with DraftKings.

7

8

9                        **FOURTH CAUSE OF ACTION**

10   **VIOLATIONS OF CALIFORINA'S CONSUMER LEGAL REMEDIES ACT**

11                    **CAL. CIV. CODE §1750, *et. seq.***

12   103. Plaintiff realleges and incorporates by reference each and every allegation

13        contained in Paragraphs 1 through 102, inclusive, as though fully set forth

14   104. Plaintiff brings this claim individually and on behalf of the Class for

15        Defendant's violations of California's Consumer Legal Remedies Act

16        ("CLRA"), Cal. Civ. Code §1781(b).

17   105. Plaintiff and the Class Members are consumers who paid for Defendant's

18        services and used them for personal, family or household purposes.

19        Plaintiff and the Class Members are "consumers" as that term is defined by

20        the CLRA in Cal. Civ. Code §1761(d).  Plaintiff and the Class Members are

21        not sophisticated experts with independent knowledge of corporate

22        branding, promotions, or fantasy sports contest incentives.

23   106. The services that Plaintiff and the other Class Members purchased from

24        Defendant were "services" within the meaning of Cal. Civ. Code §1761(b).

25   107. The Defendant's actions, representations, and conduct have violated, and

26        continue to violate the CLRA, because they extend to transactions that

27        intended to result, or which have resulted in, the sale of services to

28        consumers, *e.g.* the ability to play, compete and earn money and prizes on

1    the draftkings.com website.

2   108. Defendant violated California law because it advertised a "100% deposit

3        match" bonus to consumers for the purpose of inducing consumers to make

4        an initial deposit with DraftKings. Despite the ubiquitous advertisements

5        regarding the "100% match" of the initial deposit, Defendant in fact never

6        intended to actually provide a match of the initial deposit, and did not

7        provide matches of the initial deposits.

8   109. California's Consumer Legal Remedies Act, Cal. Civ. Code §1770(a)(9)

9        prohibits "Advertising goods or services with intent not to sell them as

10       advertised."

11  110. In addition, California's Consumer Legal Remedies Act, Cal. Civ. Code

12       §1770(a)(17) prohibits "Representing that the consumer will receive a

13       rebate, discount, or other economic benefit, if the earning of the benefit is

14       contingent on an event to occur subsequent to the consummation of the

15       transaction . . . ."

16  111. On November 16, 2015, Plaintiff sent a CLRA notice letter to Defendant,

17       which complies with California Civil Code 1782(a). Plaintiff sent,

18       individually and on behalf of the proposed Class, a letter via Certified Mail

19       to DraftKings, advising Defendant that it is in violation of the CLRA and

20       demanding that it cease and desist from such violations and make full

21       restitution. A true and correct copy of the letter is attached hereto as

22       EXHIBIT 1.

23  112. By engaging in the conduct set forth herein, Defendant violated and

24       continues to violate Cal. Civ. Code §1770(a)(9) and § 1770(a)(17), because

25       Defendant's conduct constitutes unfair methods of competition and unfair or

26       fraudulent acts or practices, in that it advertises a 100% match bonus to new

27       customers of their initial deposit, which it has no intent to actually match as

28       advertised. Plaintiff and class members have been harmed by Defendant's

conduct and seek injunctive relief for these violations of the CLRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(A) For an Order certifying the Class pursuant to Federal Rules of Civil Procedure 23, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

(B) For an Order declaring that Defendant's conduct violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.* and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.,* and awarding (i) injunctive relief, (ii) actual damages, (iii) prejudgment and post-judgment interest; (iv) exemplary and/or punitive damages pursuant to Cal. Civ. Code §3294, (v) costs of suit, and (vi) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc § 1021.5;

(C)  For an Order that Defendant committed Fraud in the Inducement and awarding: (i) actual damages, (ii) prejudgment and post-judgment interest; (iii) exemplary and/or punitive damages pursuant to Cal. Civ. Code §3294, (iv) costs of suit, and (v) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc § 1021.5;

(D) For compensatory damages in amounts to be determined by the Court and/or jury;

(E)  For prejudgment interest on all amounts awarded;

(F)  For an order of restitution and all other forms of equitable monetary relief, as pleaded;

(G) For injunctive relief as pleaded or as the Court may deem proper;

(H) For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit as pleaded; and

1      (I)  For such other and further relief as the Court deems just and proper.

2

3

Dated:  November 17, 2015              Respectfully submitted,

4

5

**THE LAW OFFICES OF AHREN A. TILLER**

6

7

By:___/s/ Ahren A. Tiller
Ahren A. Tiller, Esq.
Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

**<u>DEMAND FOR TRIAL BY JURY</u>**

16

Plaintiff, individually and on behalf of all others similarly situated, hereby demands

17

a jury trial on all claims so triable.

18

19

Dated:  November 17, 2015              Respectfully submitted,

20

21

**THE LAW OFFICES OF AHREN A. TILLER**

22

23

24

By:___/s/ Ahren A. Tiller
Ahren A. Tiller, Esq.
Attorneys for Plaintiffs

25

26

27

28

# EXHIBIT  A

*The Law Offices of*

# Ahren A. Tiller, Esq.

Brian J. McGoldrick, Esq      1230 Columbia St., Ste 1100      Scott N. Orona, Esq.
Ahren A. Tiller, Esq.      San Diego, CA 92101      Anika M. Renaud-Kim, Esq.
Carolina K. Tiller, Esq.      Ph.: 619-894-8831      Brett F. Bodie, Esq.
Derek Soinski, Esq.      Fax: 866-444-7026

November 16, 2015

***Via Certified Mail, Return Receipt Requested***

DraftKings, Inc.
c/o National Registered Agents, Inc. (Agent for Service)
160 Greentree Dr. Ste. 101
Dover, DE 19904

To Whom It May Concern:

This letter serves as a notice and demand for corrective action by DraftKings, Inc., doing business as "Draftkings" or "Draftkings.com," (hereinafter "DraftKings") pursuant to the Consumers Legal Remedies Act, Cal. Civ. Code § 1782 ("CLRA"). This letter is sent on behalf of our Client, Julian McMillan, a customer of Draftkings.com in the state of California, and all other persons similarly situated. We hereby demand that you take immediate corrective action within thirty (30) days as further described below.

DraftKings maintains a massive advertising campaign through television, radio, internet and other media wherein DraftKings states to consumers that it offers a "100% deposit match" of any initial deposit, up to a maximum of $600.00. Despite the plethora of advertisements that illustrate an exact 100% match (i.e., deposit $25 and earn a $25 deposit bonus), DraftKings does not actually offer consumers a match of their initial deposit bonus. The advertising campaign is designed to mislead consumers to believe that they will receive a 100% match when they actually receive de minimis bonuses (in the 1%-4% range) of the funds the new customer risks in daily fantasy sports contests.

The above-described representations are false and misleading and constitute unlawful, unfair, and/or fraudulent acts or practices and unfair methods of competition in violation of the CLRA, including but not limited to §§ 1770(a)(9) and (17). The representations also violate California's Unfair Competition Law and False Advertising Law, California Bus. & Prof. Code §§ 17200, *et seq.*, and 17500, *et seq.*

DraftKings has, and continues to mislead consumers into believing that upon their initial deposit, they will receive a 100% deposit match bonus from DraftKings as an incentive for registering with DraftKings and making the initial deposit. These intentionally false

and deceptive representations allow DraftKings to increase its sales and capture market share from its competitors

We hereby demand on behalf of our Client and all other similarly situated persons that DraftKings immediately: (1) cease and desist from continued promotion of the false and deceptive "100% deposit match" advertisements; (2) immediately take corrective action; and (3) provide our Client with the promised 100% deposit bonus match (a 100% payment equal to our client's initial $100 deposit made by Julian McMillan on September 24, 2015), plus reimbursement for interest.  Please comply with this demand within thirty (30) days from receipt of this letter.  Additionally, this letter also serves as notice to DraftKings of its duty to preserve and retain all documents, tangible items, and electronically stored information that is potentially relevant to this matter.

If DraftKings wants to enter into discussion to resolve the demands asserted in this letter, please do not hesitate to contact me.  Your cooperation in this matter would be greatly appreciated.

Yours truly,

Ahren A. Tiller, Esq.
Ph: 619-894-8831
Email: Ahren.tiller@blc-sd.com